UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| CAROLYN E. ALLEN, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 3:23-cv-1696-LCB |
| WOLFE PARTNERS, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Carolyn Allen, a rural mail carrier employed by the United States Postal Service ("USPS"), fell and injured her hip when the wheel of a mail cart she was pushing struck a floor mount causing her to stumble and fall from a ramp. The floor mount was meant to house the base of a safety railing that was not installed. According to Allen, she would not have fallen had the safety railing been in place. She filed the present complaint against Wolfe Partners, LLC[1], the owner of the premises on which she worked, asserting negligence, wantonness, "invitee/breach of duty," and negligent inspection. Because the undisputed facts show that Wolfe Partners owed no duty to Allen, its motion for summary judgment (Doc. 21) is due to be granted.

---

[1] The original complaint, filed in state court, identifies the Defendant as Wolf Partners, LLC. However, the notice of removal and all subsequent filings spell the company's name Wolfe Partners, LLC. The Court will use the latter spelling.

## I. Jurisdiction and Venue

Allen originally filed this case in the Circuit Court of Lauderdale County, Alabama. Wolfe Partners timely removed the case to this Court pursuant to §§ 28 U.S.C. 1332, 1441(a), and 1441(b). This Court has diversity jurisdiction over this case because the parties are geographically diverse—Allen is a citizen of Alabama, and all members of Wolfe Partners are citizens of California—and the amount in controversy exceeds $75,000. Venue is proper because a substantial part of the events giving rise to the claim occurred in the Northwestern Division of the Northern District of Alabama.

## II. Legal Standard

The purpose of summary judgment is to identify and dispose of cases where the evidence is insufficient to merit holding a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To survive summary judgment, a nonmovant must assert facts that make a sufficient showing on every essential element of his case on which he bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Factual allegations must cite to specific evidentiary materials in the record. FED. R. CIV. P. 56(c). Unsupported, speculative allegations do "not create a genuine issue of fact" and are not sufficient to withstand summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)). When ruling on a summary judgment motion, a court construes the evidence in the light most favorable to the nonmovant and resolves all reasonable doubts about the facts in the nonmovant's favor. *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 707 (11th Cir. 2019).

### III. Relevant Undisputed Facts

The facts surrounding Allen's accident are undisputed. On November 19, 2021, while employed by the USPS as a rural mail carrier, she fell from a loading ramp that lacked a safety railing and broke her hip. The ramp was equipped with floor mounts designed to secure a railing, but the railing was not installed on the day of the accident. In fact, the railing lay on the ground a few feet away from the ramp.

Also undisputed is the fact that Wolfe Partners did not construct the building. When it purchased the property, the USPS was already a tenant. Wolfe Partners and the USPS subsequently entered into a lease agreement that was in effect at the time of Allen's accident. The parties do not dispute the authenticity of the lease or the accuracy of its wording. Rather, the dispute centers around how certain portions of the lease are to be interpreted.

## IV. The Lease

In its motion for summary judgment, Wolfe Partners contends that the undisputed terms of the lease establish it owed no duty to Allen. As evidence, it points to the following language in Paragraph 1 of the maintenance rider to the lease regarding the USPS's obligation for maintenance and repair of the property:

> The Postal Service shall maintain the demised premises (including repair and replacement of items, if necessary), except for those items specifically made the responsibility of the Landlord in Paragraph 3 below. The responsibility of the Postal Service as stated herein will be fulfilled at such time and in such manner as the Postal Service considers necessary to keep the demised premises in proper condition.

(Doc. 20-2 at 10). Paragraph 3 provides that Wolfe Partners is responsible for the maintenance, repair, and replacement of the following:

a. All common or joint use interior and exterior areas and common or joint use equipment and systems that may be included as part of this lease

b. All structural elements, including but not limited to: the foundation; column supports; bearing walls; floors, not including floor covering.

4

    c. All parts of the roof system, including, but not limited to: the roof covering; flashing and insulation; roof beams, joists, and deck; soffit and fascia; and gutters and downspouts. The Postal Service will be responsible for regular cleaning of gutters and downspouts connected to the outer edge (i.e., the eaves area) of the roof; Landlord will be responsible for regular cleaning of any other gutters, downspouts, troughs, scuppers, roof drains, etc.

    d. Damage resulting from termites and any other wood-eating insects, including inspection, prevention and eradication.

    e. Defects in building construction or installation of equipment, fixtures, or appurtenances furnished by the Landlord.

    f. Damage from fire or other casualties, unless such casualties were caused by the negligence of employees or agents of the Postal Service.

    g. Items of repair performed by the Postal Service due to the failure of any element for which the Landlord is responsible.

    h. Landlord is responsible for any necessary replacement of the well and septic systems, including lateral fields during the continuance of the lease. If the replacement of either system becomes necessary as a result of the failure of that system, the Landlord remains responsible for providing an operating well system and septic system. Landlord is also responsible for any inspections of these systems required by governing bodies. The Postal Service is responsible for maintenance of the well system and septic system, including any necessary pumping and cleaning of the septic system.

…

Whenever there is a need for maintenance, repair, or replacement which is the Landlord's obligation under this [Lease], the Postal Service will require the Landlord to rebuild or repair the premises as necessary to restore them to tenantable condition to the satisfaction of the Postal Service. The Postal Service will, excepting emergencies,

> provide the Landlord with written notice stating a reasonable time period for completion of all necessary repairs. . . . If the Landlord (or the mortgagee or assignee, on behalf of the Landlord) fails to prosecute the work with such diligence as will ensure its completion within the time specified in the notice (or any extension thereof as may be granted at the sole discretion of the Postal Service), or fails to complete the work within said time, the Postal Service shall have the right to perform the work (by contract or otherwise), and withhold the cost plus any administrative cost and/or interest from rental payments due or to become due under this Lease.

*Id.*

There is also undisputed evidence that the USPS engaged a subcontractor, EMCOR, to perform the maintenance and repair functions that were the USPS's responsibility. EMCOR would also notify Wolfe Partners in writing of items the USPS believed were its responsibility under Paragraph 3 of the lease and ensure the work was completed to the USPS's satisfaction. In 2019, approximately two years before Allen's accident, the USPS became aware of an issue with the safety railing in question. Wolfe Partners submitted as an exhibit a record of the 2019 issue, which described the problem as follows: "Ramp railing loose and vent is bent causing fall and cut hazards." (Doc. 20-7 at 5). Under a section titled, "Problem Notes," it stated: "Problem excluded from Landlord Maintenance by JERRY WRIGHT; Reason: USPS Maintenance Responsibility."[2]  *Id.*  The document indicated that the problem was fixed. Similarly, on September 18, 2021,

---

[2] Allen disputes the paragraph containing this assertion on the ground that the record does not identify Jerry Wright. The Court concludes, however, that this issue is immaterial.

approximately two months before Allen's accident, another report was created indicating that the same railing was missing. The report provided: "There is no longer a metal railing leading inside the rear of the building. The metal railing has fallen completely off the ramp." *Id.* at 4. As with the previous problem, the report indicates that the problem was "excluded from Landlord Maintenance by TONY MARTINEZ; Reason; USPS Maintenance Responsibility." *Id.* Unfortunately for Allen, her accident occurred before the railing was fixed. However, she does not dispute Wolfe Partners's contention that it never received notice from the USPS, written or otherwise, regarding the missing railing on either occasion.

## V. Summary Judgment is due to be granted because Wolfe Partners owed no duty to Allen in relation to the safety railing.

In its motion for summary judgment, Wolfe Partners correctly points out that to prevail on a premises liability claim, a "plaintiff must prove (1) that her fall was caused by a defect or instrumentality located on the defendant's premises, (2) that the fall was the result of the defendant's negligence, and (3) that the defendant had or should have had notice of the defect or instrumentality before the accident." *Shanklin v. New Pilgrim Towers, L.P.*, 58 So.3d 1251, 1255 (Ala. Civ. App. 2010) (quoting *Ervin v. Excel Props., Inc.*, 831 So.2d 38, 40-41 (Ala. Civ. App. 2001)). Further, "[t]he elements of negligence in a premises liability case 'are the same as those in any tort litigation: duty breach of duty, cause in fact, proximate or legal cause, and damages.'" *Harrell v. Wal-Mart Stores East, LP*, 724 F. Supp. 3d 1250,

7

1256 (N.D. Ala. 2024) (quoting *Byrne v. Fisk*, 385 So.3d 973, 978 (Ala. 2023)). No defendant can be liable for negligence if the defendant did not owe a duty to the injured plaintiff. *Marks v. Quicken Loans, Inc.*, 561 F. Supp. 2d 1259, 1266 (S.D. Ala. 2008) ("It is black-letter law that duty and breach of duty are fundamental elements of a negligence cause of action in Alabama.").

Wolfe Partners argues that Allen cannot establish it owed her a duty because the lease that governed the relationship between it and the USPS delegated any such responsibilities to the USPS via Paragraphs 1 and 3 of the maintenance rider. Wolfe Partners also cites *Casey v. Estes*, 657 So. 2d 845, 848 (Ala. 1995), in which the Alabama Supreme Court held that, "in the absence of a covenant to repair the defect that caused the injury, a lessor is liable only for injuries resulting from latent defects known to the lessor at the time of the leasing and which the lessor concealed from the tenant." Allen does not argue that the missing railing was a latent defect that Wolfe Partners concealed from the USPS or that there was a covenant for Wolfe Partners to repair the railing.

Allen does not directly address Wolfe Partners's contentions regarding its and the USPS's respective obligations laid out in Paragraphs 1 and 3 of the maintenance rider to the lease. Instead, she points to Paragraph 5 of the rider, which provides:

The Landlord must:

  a. Comply with applicable Occupational Safety and Health Standards, title 29 Code of Federal Regulations (CFR) (including but not limited to parts 1910 and 1926), promulgated pursuant to the authority of the Occupational Safety and Health Act of 1970 (OSHA); and

  b. Comply with any other applicable federal, state, or local regulation governing workplace safety to the extent they are not in conflict with a; and

  c. take all other proper precautions to protect the health and safety of:

    1. any laborer or mechanic employed by the Landlord in performance of this agreement; and

    2. Postal Service employees; and,

    3. the public.

Relying on the OSHA statute and accompanying regulations, Allen argues that the missing railing violated several OSHA requirements. She contends that Paragraph 5 imposed a duty on Wolfe Partners to ensure that there were no such violations. (Doc. 23 at 15), quoting 29 U.S.C.A. § 654(a) (an employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."). Because the OSHA requirements were incorporated into the lease, Allen says, Wolfe Partners assumed the duties of an employer with respect to USPS employees and consequently had a duty to regularly inspect the property and fix the missing railing. By failing to do so, she says, Wolfe Partners breached that duty.

The Court is therefore presented with a dispute in which Wolfe Partners asserts that Paragraphs 1 and 3 of the maintenance rider relieve it of any duty to USPS employees, while Allen contends that Paragraph 5 imposes such a duty. She contends that, notwithstanding the delegation of responsibilities in Paragraphs 1 and 3 of the rider, Paragraph 5 supersedes those provisions and imposes many of the same duties on Wolfe Partners. Importantly, Allen does not contend that the lease's language is ambiguous.

"If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment." *McDonald v. U.S. Die Casting & Dev. Co.*, 585 So. 2d 853, 855 (Ala. 1991). Accordingly, this presents a question of law for the Court to settle.

As noted, Allen's reading of Paragraph 5 would render most of the provisions in Paragraphs 1 and 3 superfluous. It would make little sense to enumerate the parties' respective responsibilities in Paragraphs 1 and 3 only to later incorporate broad regulations that effectively impose on Wolfe Partners the very duties it sought to limit. Contracts like the lease in question "are construed to give effect to the intention of the parties and, to determine this intent, the court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions. *State Farm Mut. Auto. Ins. Co. v. Lewis*, 514

So. 2d 863 (Ala. 1987). "[A] court will attempt to give meaning and effect, if possible, to every word and phrase in the contract in determining the meaning thereof, and a construction which neutralizes any provision of a contract should never be adopted if the contract can be so construed as to give effect to all the provisions...." *Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144, 1154 (Ala. 2003), quoting J. Appleman, *Insurance Law and Practice* § 7383 (1981).

Read in context, Paragraph 5—though seemingly contradictory—can be construed to impose OSHA obligations on Wolfe Partners only when it is on the premises performing repairs or maintenance for which it bears responsibility under Paragraphs 1 and 3. This is supported by section (c)(1) of Paragraph 5, which provides that Wolfe Partners shall, in addition to abiding by OSHA regulations and other applicable laws, "take all other proper precautions to protect the health and safety of any laborer or mechanic employed by [Wolfe Partners] *in performance of this agreement*." (Doc. 20-2 at 11) (emphasis added). That language implies that Paragraph 5 imposes these duties on Wolfe Partners only when it is discharging its responsibilities under other sections of the lease. This reading is further bolstered by the last sentence in Paragraph 5, which compels Wolfe Partners to "include this clause in all subcontracts hereunder and require its inclusion in all subcontracts of a lower tier." (Doc. 20-2 at 11). This reading of the lease gives effect to each word and phrase in the agreement and avoids a construction in which one portion

11

of the lease nullifies another. Accordingly, the Court finds that Paragraph 5 does not impose a duty on Wolfe Partners under the undisputed facts of this case.

As noted above, none of the material facts regarding Allen's accident or the authenticity of the lease are disputed. The only question was whether Wolfe Partners had a duty to Allen that it breached by not regularly inspecting the property and repairing the safety railing on its own. Because Wolfe Partners owed no duty to Allen, her negligence claim fails, as do her premises-liability and negligent-inspection claims, all of which require the existence and breach of a duty owed to her. As there are no genuine disputes of material fact to the contrary, Wolfe Partners is entitled to summary judgment on Counts One, Three, and Four of Allen's complaint.[3]

### VI. Allen's wantonness claim also fails as a matter of law.

Allen's wantonness claim fails for the same reasons as her other claims. In her complaint, Allen alleged that Wolfe Partners was "under a duty to provide a safe railing on the ramp at its premises for the use of its tenants and their employees" and that it "consciously disregarded the safety of its tenants, and their employees, on their premises." (Doc. 1-1 at 4). In order to find a defendant liable for wanton conduct like that alleged in the complaint, a plaintiff "must show that,

---

[3] Wolfe Partners also argued that, even if it owed a duty to Allen, it was not liable because the missing railing was open and obvious. Because there is no duty, the Court need not address that issue.

12

with reckless indifference to the consequences, the opposing party consciously and intentionally … omitted some known duty with knowledge of the existing conditions, and that this act or omission produced the injury complained of." *Joseph v. Staggs*, 519 So. 2d 952, 954 (Ala. 1988), citing *Brown v. Turner*, 497 So.2d 1119 (Ala.1986). As noted above, Wolfe Partners had no duty to inspect the premises or repair the safety railing. Because Wolfe Partners owed no such duty, it cannot be said to have consciously omitted it, and Allen's wantonness claim fails as a matter of law. As no genuine dispute of material fact exists to alter this conclusion, summary judgment is due to be granted on Count Three of Allen's complaint.

## VII. Conclusion

For the foregoing reasons, Wolfe Partners's motion for summary judgment (Doc. 21) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. A separate, final judgment will follow.

**DONE** and **ORDERED** September 19, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE